## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| **RAHEEM MUHAMMAD**, on behalf of himself and all others similarly situated, | ) ) ) | Case No. _____ |
| Plaintiff, | ) ) | Hon. |
| v. | ) | |
| **BERNER FOOD & BEVERAGE, LLC,** | ) ) | **JURY TRIAL DEMANDED** |
| Defendant. | ) ) ) | |

### <u>VERIFIED COLLECTIVE AND CLASS ACTION COMPLAINT</u>

Plaintiff, Raheem Muhammad ("Plaintiff"), individually and on behalf of other similarly situated individuals, brings this Collective and Class Action Complaint against Defendant, Berner Food & Beverage, LLC ("Defendant"), to recover unpaid overtime compensation, liquidated damages, attorney's fees, costs, and other relief as appropriate under the Fair Labor Standards Act ("FLSA") 29 U.S.C. §§ 201, *et seq*. Additionally, Plaintiff, individually and on behalf of other similarly situated individuals, brings this Class Action Complaint against Defendant for violating the Illinois Biometric Information Privacy Act, 740 ILCS 14/1, *et seq*. ("BIPA"). Plaintiff alleges the following upon personal knowledge as to Plaintiff's own acts and experiences, and upon information and belief as to all other matters:

### <u>PARTIES</u>

1. Plaintiff, Raheem Muhammad, is and was a resident and citizen of the state of Illinois at all relevant times.

2. During the past three years, additional Opt-in Plaintiffs were or are employed by Defendant in similar positions and their consent forms will also be filed in this case.

3. Defendant, Berner Food & Beverage, LLC is a food and beverage supplier with

multiple locations throughout the state of Illinois.[1]

4.      Defendant is a Delaware corporation that is headquartered in Dakota, Illinois and is licensed to conduct business in Illinois.

5.      Defendant's registered agent for purposes of service of process is identified online as CT Corporation System, 208 SO Lasalle St., Suite 814, Chicago, Illinois 60604.

## JURISDICTION AND VENUE

6.      This Court has subject matter jurisdiction over Plaintiff's FLSA claim under 28 U.S.C. § 1331 because Plaintiff's claim raises a federal question under 29 U.S.C. § 201, *et seq.*

7.      Additionally, this Court has jurisdiction over Plaintiff's FLSA claim under 29 U.S.C. § 216(b), which provides that suit under the FLSA "may be maintained against any employer … in any Federal or State court of competent jurisdiction…."

8.      Defendant's annual sales exceed $500,000.00, and Defendant employs more than two individuals; thus, the FLSA applies in this case on an enterprise basis. Defendant's employees, including Plaintiff, engage in interstate commerce or in the production of goods for commerce; therefore, they are also covered by the FLSA on an individual basis.

9.      Defendant is engaged in an "enterprise" through "common operations" and/or "common control" under the FLSA, 29 U.S.C. § 203(r)(1), subject to the provisions of 29 U.S.C. §§ 201, *et seq.*; 29 C.F.R. § 791.237.

10.     This Court also has supplemental jurisdiction over Plaintiff's state-law claims pursuant to 28 U.S.C. §1367 because they originate from the same or similar facts that form the basis of her federal claims.

11.     Moreover, this Court has original jurisdiction over this action under the Class

---

[1] *See* https://bernerfoodandbeverage.com/contact-us (last visited December 9, 2024.)

Action Fairness Act of 2005, 28 U.S.C. § 1332(d). This is a class action in which the aggregate claims of the individual class members exceed the sum value of $5,000,000.00 exclusive of interest and costs, there are believed to be in excess of 100 class members, and at least some class members have a different citizenship than Defendant.

12.     Defendant's registered agent for purposes of service is the CT Corporation System, 208 SO Lasalle St., Suite 814, Chicago, Illinois 60604.

13.     Venue is proper in the Northern District of Illinois under 28 U.S.C. § 1391(b)(1) because Defendant's Illinois locations are in Rockford, Illinois, and Dakota, Illinois.

14.     Defendant maintains its Illinois locations in Winnebago County, Illinois and Stephenson County, Illinois; therefore, this action is properly assigned to the Western Division.

## FACTUAL ALLEGATIONS

15.     Plaintiff worked for Defendant from approximately November 2023 through May 17, 2024, as a non-exempt, hourly employee.

16.     Plaintiff worked at the Dakota, Illinois warehouse as a forklift operator. His job duties included driving the forklift and transporting pallets throughout the warehouse.

17.     During Plaintiff's employment, Defendant used a biometric time-tracking system that required its employees to use facial recognition scans as a means of authentication each time they clocked-in or clocked-out.

18.     Plaintiff often worked more than 40 hours per week while employed with Defendant.

19.     Plaintiff's most recent base rate of pay was $19.00 per hour.

20.     In addition to the base rate of pay, Defendant incorporated various types of routine and non-discretionary pay into its payment structure. For example, Defendant provided Plaintiff a

$400.00 bonus for volunteering to work at another location for four days. Additionally, Plaintiff received a quarterly bonus for perfect attendance.

21.     As a non-exempt employee, Plaintiff was entitled to full compensation for all overtime hours worked at a rate of 1.5 times his "regular rate" of pay.

### The FLSA Regular Rate of Pay

22.     Under the FLSA, the regular rate is the "Keystone" to calculating the correct overtime rate. *Walling v. Youngerman-Reynolds Hardwood Co.*, 325 U.S. 419 (1945).  It is "the hourly rate actually paid the employee for the normal, nonovertime workweek for which he is employed." 29 C.F.R. §778.108.

23.     No matter how an employee is paid—whether by the hour, by the piece, on a commission, or on a salary—the employee's compensation must be converted to an equivalent hourly rate from which the overtime rate can be calculated.  29 C.F.R. §778.109. "The regular hourly rate of pay is determined by dividing the employee's total remuneration for employment (except statutory exclusions) in any workweek by the total number of hours actually worked by the employee in that workweek for which such compensation was paid." *Id.*

24.     There is a statutory presumption that remuneration in any form must be included in the regular rate calculation.  Defendants carry the burden to establish that any payment should be excluded. *Acton v. City of Columbia, Mo.*, 436 F.3d 969, 976 (8th Cir. 2006) (citing *Madison v. Resources for Human Dev. Inc.*, 233 F.3d 187 (3rd Cir. 2000)). Thus, determining the regular rate starts from the premise that all payments made to Defendant's hourly employees for work performed are included in the base calculation unless specifically excluded by statute.

25.     Once the total amount of an employee's "regular" compensation is deduced, "the determination of the regular rate becomes a matter of mathematical computation." *Walling v.*

*Youngerman-Reynolds Hardwood Co.*, 325 U.S. 419, 425 (1945). The regular rate must be expressed as an hourly rate because, although any method of compensating an employee is permitted, the FLSA imposes its overtime requirements in terms of hourly wages. Thus, if necessary, an employer must convert an employee's wages to an hourly rate to determine compliance with the statute.

26.     Plaintiff's "total renumeration" included not only his base hourly pay, but also any bonuses. Indeed, 29 C.F.R. § 548.502 expressly provides that "[e]xtra overtime compensation must be separately computed and paid on payments such as bonuses or shift differentials which are not included in the computation of the established basic rate…."; *see also* 29 C.F.R. §778.207(b) (Under FLSA, the regular rate of pay must consist of all forms of remuneration including non-discretionary bonuses and "such extra premiums as night shift differentials… and premiums paid for hazardous, arduous, or dirty work.").

27.     Defendant's bonuses and other renumeration do not fall within any of the statutory exclusions from the regular rate as provided in 29 U.S.C. §§ 207(e)(1)-(8).

28.     However, Defendant failed to incorporate any bonuses into its hourly employees' overtime rate calculations, resulting in *prima facie* violations of the FLSA.

29.     Consistent with Section 7(a) of the Fair Labor Standards Act, Plaintiff is entitled to overtime pay equal to 1.5 times his regular rate of pay for hours worked in excess of forty (40) hours per week.

30.     For example, Plaintiff's weekly pay stub for the pay period beginning April 27, 2024, through May 3, 2024 shows 61.03 hours of work, a base hourly rate of $18.50, and gross earnings of $1,723.58, inclusive of $400.00 in bonus pay. However, the $27.75 overtime rate did not account for the bonus pay, and therefore, Defendant violated the FLSA.

5

31.     Defendant's other paystubs for Plaintiff show similar violations of the FLSA regular rate calculation.

32.     Plaintiff worked in excess of 40 hours a week, and was paid some—but not all—overtime for those hours, and at a rate that did not include Defendant's bonuses and other remuneration as required by the FLSA.

33.     As a result of these *prima facie* FLSA violations, Defendant is liable to Plaintiff for unpaid wages, liquidated damages, reasonable attorney's fees and costs, interest, and any other relief deemed appropriate by the Court.

### The BIPA

34.     Defendant used a biometric time-tracking system that required Plaintiff to use facial recognition scans as a means of authentication each time he clocked-in or clocked-out.

35.     BIPA was enacted in 2008 to regulate two types of biometric data.  First BIPA regulates any "biometric identifier," defined as "a retina or iris scan, fingerprint, voiceprint, or scan of hand or face geometry," and specifically excludes a lengthy list of specific identifiers. 740 ILCS 14/10.  Second, it regulates any "biometric information" meaning "any information, regardless of how it is captured, converted, stored, or shared, based on an individual's biometric identifier used to identify an individual." *Id*.

36.     BIPA is not limited to simply the capture of such biometrics.  BIPA regulates the entire life cycle of biometric data captured by a private entity from any individual, from capture to use and disclosure.

37.     Biometric identifiers allow private entities, such as Defendant, to accurately and with some degree of certainty track the hours its employees' work. Additionally, Defendant employed this system to ensure that the correct person was clocking in and clocking out.  The

biometric tracking system permitted Defendant to pinpoint specifically who clocked in or clocked out because of the unique nature of biometric identifiers.

38.     Under BIPA, because of the unique nature of biometric identifiers, private entities, such as Defendant, may not collect, capture, purchase, or otherwise obtain an individual's biometric identifiers, such as facial scans, or any biometric information, including any data regardless of the manner it is converted or stored, unless it first:

    a.  informs the individual or the individual's legally authorized representative in writing that a biometric identifier or biometric information is being collected or stored;

    b.  informs the individual or the individual's legally authorized representative in writing of the specific purpose and length of term for which a biometric identifier or biometric information is being collected, stored, and used; and

    c.  receives a written release executed by the individual of the biometric identifier or biometric information or the individual's legally authorized representative.

740 ILCS 14/15(b)(1)-(3).

39.     Private entities in possession of biometric information are also required to develop a publicly available "retention schedule and guidelines for permanently destroying biometric identifiers and biometric information when the initial purpose for collecting or obtaining such identifiers or information has been satisfied or within 3 years of the individual's last interaction with the private entity, whichever occurs first." 740 ILCS 14/15(a).

40.     BIPA restricts how, when, and if a private entity may disclose biometric information by providing that "[n]o private entity in possession of a biometric identifier or biometric information may disclose, redisclose, or otherwise disseminate a person's or a customer's biometric identifier or biometric information unless:

    (1) the subject of the biometric identifier or biometric information or the subject's legally authorized representative consents to the disclosure or redisclosure;

(2) the disclosure or redisclosure completes a financial transaction requested or authorized by the subject of the biometric identifier or the biometric information or the subject's legally authorized representative;

(3) the disclosure or redisclosure is required by State or federal law or municipal ordinance; or

(4) the disclosure is required pursuant to a valid warrant or subpoena issued by a court of competent jurisdiction.

740 ILCS 14/15(d).

41.     Private entities are also prohibited from profiting from an individual's biometric identifier or biometric information. BIPA provides without exception that "[n]o private entity in possession of a biometric identifier or biometric information may sell, lease, trade, or otherwise profit from a person's or a customer's biometric identifier or biometric information." 740 ILCS 14/15(c).

42.     The Illinois Legislature recognized a need for additional protection and recourse because "biometrics are unlike other unique identifiers that are used to access finances or other sensitive information" and therefore required its own set of rules. For example, even sensitive information like Social Security numbers, when compromised, can be changed. Biometrics, however, are biologically unique to the individual [and] therefore, once compromised, the individual has no recourse, is at a heightened risk for identity theft, and is likely to withdraw from biometric-facilitated transactions." 740 ILCS 14/5.

43.     Compliance with BIPA is minimally invasive. Defendant could have accomplished compliance with a single sheet of paper explaining the necessary disclosures, and given it to Plaintiff to read and sign.

44.     To remedy irreparable harm caused by a private entity violating BIPA, the statute creates a private right of action authorizing "[a]ny person aggrieved by a violation of [BIPA] shall

have a right of action" to sue and recover for each subject liquidated damages of $1,000, or $5,000 in the event of an intentional or reckless violation, plus attorneys' fees, costs, and appropriate injunctive relief. 740 ILCS 14/20 (as amended Aug. 2, 2024).

45.     The statute of limitations applicable to BIPA is five (5) years. *Tims, et al. v. Black Horse Carriers, Inc.*, Case No. 127801, __ N.E. 3d __, 2023 WL 1458046, slip op. at 13 (Ill. Sup. Ct. Feb. 2, 2023).

46.     Defendant used a biometric time-tracking system that required its employees, including Plaintiff, to use facial recognition scans as a means of authentication each time they clocked-in and clocked-out.

47.     Defendant required Plaintiff and the other employees to submit to facial recognition scans for storage in Defendant's electronic employee database.

48.     The unique nature of biometric identifiers allows private entities, such as Defendant, to instantly gather these unforgeable and accurate signature of its employees.

49.     Defendant failed to inform Plaintiff and other employees of the extent and purpose for which it collected their biometric data and whether the data was or will be disclosed to third parties.

50.     Defendant failed to maintain a written, publicly available policy identifying its retention schedule for biometric data or providing guidelines for permanently destroying its employees' fingerprints when the initial purpose for collecting or obtaining the employees' fingerprints is no longer relevant, as required by BIPA.  An employee who leaves the company does so without any knowledge of when or if their biometric identifiers will be removed from Defendant's database.

51.     Additionally, Defendant never informed Plaintiff of what would happen to his

biometric information were Defendant to close the specific location(s) in which he worked, go out of business entirely, merge with another company, or go bankrupt.

52. Defendant failed to publish a legally mandated data-retention policy and to disclose the purposes for which it collected biometric data. In fact, Defendant's employees have no idea whether Defendant sells, discloses, or otherwise disseminates their unique biometric identifiers which, once compromised, cannot be undone. Defendant's employees were not told to whom Defendant discloses their biometric data.

53. On top of Defendant's failure to notify employees and the public of the basics of its collection, use, retention, and protection of biometric data, it also failed to obtain the written release required by BIPA before collecting its employees' biometric data.

54. Defendant failed to publish a biometric data-retention policy or obtain written releases from its employees prior to the collection of their facial recognition scans in violation of BIPA.

55. Therefore, on behalf of himself and the proposed Class defined below, Plaintiff seeks an injunction requiring Defendant to comply with BIPA, as well as an award of statutory damages to the Class members and monetary damages to be determined at trial, together with reasonable attorneys' fees and costs and appropriate injunctive relief.

## FLSA COLLECTIVE ACTION ALLEGATIONS

56. Pursuant to 29 U.S.C § 216(b), Plaintiff brings this action on behalf of all of Defendant's current and former hourly employees who worked at any of Defendant's locations in the United States at any time in the past three years.

57. Plaintiff and putative Collective Members are "similarly situated" as that term is used in 29 U.S.C § 216(b) because, among other things, all such individuals were eligible for and

did receive bonuses and other remuneration, but such pay was not calculated as part of their regular rate as required by the FLSA.

58.     Upon information and belief, Defendant utilized a centralized payroll system which calculated overtime pay for all similarly situated employees in the same or similar manner regardless of job title or work location.

59.     Resolution of this action requires inquiry into common facts.

60.     These similarly situated individuals are known to Defendant, are readily identifiable, and can be located through Defendant's payroll records, which Defendant is required to maintain pursuant to the FLSA. 29 U.S.C. § 211(c); 29 C.F.R. § 516 *et seq*.

61.     Notice to similarly situated employees is proper and necessary so that these employees may be readily notified of this action through effective means, including email and text message, and allowed to opt in for the purpose of collectively adjudicating their claims for unpaid overtime compensation, liquidated damages and/or interest, and attorneys' fees and costs under the FLSA.

62.     Upon information and belief, there are thousands of similarly situated current and former employees of Defendant who were not paid their required wages and who would benefit from the issuance of Court-authorized notice of this lawsuit and the opportunity to join it.

63.     Plaintiff seeks a declaration that his rights, and the rights of the putative Collective members, were violated, and a judgment awarding them unpaid back wages, liquidated damages, and attorneys' fees and costs to make them and the putative Collective members whole for damages they suffered, and to help ensure Defendant will not subject future workers to the same illegal conduct in the future.

64.     At the earliest time possible, Plaintiff will request a Court-authorized notice of this

action pursuant to 29 U.S.C. § 216(b) to all similarly situated employee who worked for Defendant at any time in the past three years.

## **BIPA CLASS ACTION ALLEGATIONS**

65.     Plaintiff brings this action pursuant to Fed. R. Civ. P. 23(b)(3) on his own behalf and on behalf of:

> All citizens of Illinois whose biometric identifiers or biometric information were collected, captured, stored, transmitted, disseminated, or otherwise obtained by or on behalf of Berner Food & Beverage, LLC at any time in the past five years.

(hereinafter referred to as the "Class").  Plaintiff reserves the right to amend the putative class definition if necessary.

66.     The Class members are so numerous that joinder of all Class members in this case would be impractical.  Plaintiff reasonably estimates there are hundreds of Class members.  The Class members should be easy to identify from Defendant's records.

67.     Plaintiff's claims are typical of the claims of the Class he seeks to represent, because the basis of Defendant's liability to Plaintiff and the Class is substantially the same, and because Defendant's conduct has resulted in similar injuries to Plaintiff and to the Class.

68.     There is a well-defined community of interest among the Class members and common questions of law and fact predominate in this action over any question affecting individual Class members.  These common legal and factual questions include but are not limited to:

> d.  Whether Defendant's biometric system collects, captures, or otherwise obtains biometric identifiers or biometric information;
>
> e.  Whether any biometric information is generated or otherwise derived from Defendant's biometric system;
>
> f.  Whether Defendant disseminates biometric information;

g. Whether Defendant made available to the public a written policy that establishes a retention schedule and guidelines for destroying biometric identifiers or biometric information;

h. Whether Defendant obtained a written release from the Class members before capturing, collecting, or otherwise obtaining their biometric identifiers or biometric information;

i. Whether Defendant's conduct violates BIPA;

j. Whether Defendant's BIPA violations are willful or reckless; and

k. Whether Plaintiff and the Class members are entitled to damages and injunctive relief.

69. Plaintiff will fully and adequately protect the interests of the Class members and retained counsel who are qualified and experienced in the prosecution of class actions. Neither Plaintiff nor his counsel have interests that are contrary to, or conflicting with, the interests of the Class members.

70. A class action is superior to other available methods for the fair and efficient adjudication of this controversy because, inter alia, it is economically infeasible for the Class members to prosecute individual actions of their own given the relatively small amount of damages at stake for each individual along with fear of reprisal by their employer. Prosecution of this case as a Rule 23 Class action will also eliminate the possibility of duplicative lawsuits being filed in state and federal courts throughout Illinois.

71. This case will be manageable as a Rule 23 Class action. Plaintiff and his counsel know of no unusual difficulties in this case, and Defendant has advanced, networked computer and biometric systems that will allow the facts, biometric information, and damages issues, in this case, to be resolved with relative ease.

72. Because the elements of Fed. R. Civ. P 23(b)(3) are satisfied in this case, class certification is appropriate. *Shady Grove Orthopedic Associates, P.A. v. Allstate Ins. Co.*, 559,

U.S. 393, 398 (210) (By its terms [Rule 123] creates a categorical rule entitling a plaintiff whose suit meets the specified criteria to pursue his claims as a class action").

73.    Because Defendant acted and refused to act on grounds that apply generally to the Class members, and because declaratory relief is appropriate in this case with respect to the Class members as a whole, class certification under Fed. R. Civ. P. 23(b)(2) is also appropriate.

## COUNT I

### Violations of The Fair Labor Standards Act,
### 29 U.S.C. § 201, *et seq.* -- Failure To Pay Overtime

74.    Plaintiff incorporates the foregoing paragraphs related to the FLSA as if fully restated herein.

75.    Plaintiff is an employee within the meaning of 29 U.S.C. § 203(e).

76.    Defendant is an employer within the meaning of 29 U.S.C. § 203(d).

77.    Defendant was engaged in an "enterprise" through "common operations" and/or "common control" under the FLSA, 29 U.S.C. § 203(r)(1), subject to the provisions of 29 U.S.C. §§ 201, *et seq.*; 29 C.F.R. § 791.237.

78.    The Fair Labor Standards Act and its implementing regulations require that the regular rate of pay include all forms of remuneration. Section 207(e) outlines eight exceptions where payments to employees may not be included in the regular rate. Defendant's bonuses and other remuneration did not fall into any of those exceptions.

79.    Defendant failed to include bonuses and other remuneration into the regular rate of pay for Plaintiff and all others similarly situated when calculating its overtime rates. The failure to include this remuneration in overtime computations violated Section 7(a) of the FLSA, because Defendant's hourly employees were working overtime without being paid the statutorily required rates. 29 U.S.C § 207(a).

80.     At all relevant times, Defendant maintained a policy and practice of willfully refusing to pay Plaintiff and all putative collective members the legally required amount of overtime compensation for all hours worked in excess of 40 hours per workweek, in violation of the FLSA.

81.     As a result of Defendant's willful failure to compensate Plaintiff and the putative collective members at a rate not less than 1.5 times the regular rate of pay for work performed in excess of 40 hours in a workweek, Defendant violated and continues to violate the FLSA, 29 U.S.C. §§ 201, *et seq.*, including but not limited to 29 U.S.C. §§ 207(a)(1), 215(a), and 29 C.F.R. §§ 778.104. Defendant's conduct as alleged herein constitutes a willful violation of the FLSA within the meaning of 29 U.S.C. § 255(a).

82.     Plaintiff and all others similarly situated are entitled to back pay as well as liquidated damages in an amount equal to their back pay. As a result of Defendant's FLSA violations, Plaintiff and all others similarly situated are owed overtime wages at a rate to be calculated by taking the difference between the overtime they should have received for each workweek and the overtime they did receive during the same time period calculated using the incorrect regular rate. The exact amount can be readily determined using payroll and other employment records Defendant is statutorily required to maintain under FLSA 29 U.S.C. § 211(c).

83.     Plaintiff and all others similarly situated are entitled to back pay, liquidated damages, interest, attorney's fees and costs, and other relief as appropriate under the statute. 29 U.S.C. § 216(b).

## COUNT II

**Violations of the Illinois Biometric Information Privacy Act, 740 ILCS 14/1, *et seq.*
(Brought by Plaintiff on Behalf of the Class against Defendant)**

84.     Plaintiff incorporates the foregoing paragraphs related to the BIPA as if fully

restated herein.

85.     At all relevant times, Defendant was a corporation under the laws of Delaware, headquartered in Dakota, Illinois, and therefore a "private entity" under 740 ILCS 14/10.

86.     To prevent timeclock fraud, Defendant obtains and relies on data and information derived from biometric identifiers and biometric information it collects, captures, stores, transfers, and/or uses from the Plaintiff and Class members upon their employment with Defendant.

87.     In violation of 740 ILCS 14/15(b), Defendant failed to provide the required written disclosures regarding its use of such biometric information, the purpose or duration of such use, and also failed to obtain releases from Plaintiff and the Class members.

88.     Defendant collected, captured, stored, transferred, and/or used Plaintiff's and Class members' biometric identifiers or biometric information through its timekeeping system. Therefore, every time Plaintiff or the Class members clocked in or clocked out, Defendant obtained a scan of their face, thereby collecting, capturing, storing, transferring, or using Plaintiff's and the Class members' biometric information without their consent or a written plan for retention.

89.     Once obtaining Plaintiff and Class members' biometric identifiers and biometric information, Defendant upon storing it failed to provide and make public under 740 ILCS 14/15(a) a retention and destruction schedule for such biometric information.

90.     BIPA provides for statutory damages of $5,000 for each willful and/or reckless violation of BIPA and, alternatively damages of $1,000 for each negligent violation of the BIPA.

91.      Defendant's violations of BIPA were knowing and willful.  Defendant failed to comply with BIPA in the course of its conduct, or omissions, as set forth herein.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, individually and on behalf of the proposed Class, respectfully

requests this Court enter an order:

a.      Designation of this action as a collective action pursuant to the FLSA, 29 U.S.C. § 216(b), and an order directing Defendant to provide Plaintiff a list of all current and former hourly employees who worked for Defendant at any time in the past three years. This list shall include the last known addresses, emails, and telephone number of each such person, so that Plaintiff can give those individuals notice of this action and an opportunity to make an informed decision about whether to participate;

b.      An Order designating Plaintiff as representative of the FLSA Collective, and the undersigned as counsel for the same;

c.      A complete accounting of all the compensation Plaintiff and all others similarly situated are owed;

d.      A declaratory judgment that the practices complained of herein are unlawful under the FLSA;

e.      A monetary judgment awarding full back pay and an equal amount in liquidated damages;

f.      Certifying this case as a class action on behalf of the Class defined above, appointing Plaintiff as the representative of the Class, and appointing the undersigned as Class Counsel;

g.      Declaring that Berner Food & Beverage, LLC, as described above, violated BIPA;

h.      Awarding injunctive and equitable relief as necessary to protect the interests of Plaintiff and the Class by requiring Defendant to comply with BIPA;

i.      Awarding statutory damages of $1,000 for each willful and/or reckless violation of the BIPA, pursuant to 740 ILCS 14/20(a)(1);

j.      Awarding statutory damages of $5,000 for each negligent violation of the BIPA pursuant to 740 ILCS 14/20(a)(2);

k.      Awarding reasonable attorneys' fees, costs, and other litigations expenses, pursuant to 740 ILCS 14/20(a)(3);

l.      Awarding pre- and post-judgment interest, as allowable by law; and

m.      Awarding such further and other relief as the Court deems just and equitable.

## JURY DEMAND

Plaintiff, individually and on behalf of the putative Collective and Class members, by and through his attorneys, hereby demands a trial by jury for all issues so triable.

DATED: December 10, 2024            Respectfully submitted,

By:      /s/ Jesse L. Young
Jesse L. Young (P72614)
SOMMERS SCHWARTZ, P.C.
141 E. Michigan Avenue, Suite 600
Kalamazoo, Michigan 49007
(269) 250-7500
jyoung@sommerspc.com

Jonathan Melmed
Meghan Higday (300183)
Melmed Law Group, P.C.
1801 Century Park E., Suite 850
Los Angeles, California 90067
Phone: (310) 824-3828
mh@melmedlaw.com
jm@melmedlaw.com

*Attorneys for Plaintiff and the Putative Collective and Class*

Docusign Envelope ID: B7A3C7B7-F34E-4B73-A00B-F9BC48C7342A

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| **RAHEEM MUHAMMAD**, on behalf of himself and all others similarly situated, | ) ) ) | Case No. _____ |
| Plaintiff, | ) | Hon. |
| v. | ) | |
| **BERNER FOOD & BEVERAGE, LLC**, | ) ) | |
| Defendant. | ) ) | |

## **VERIFICATION**

I, Raheem Muhammad, being first duly sworn, Plaintiff in the above-entitled cause, deposes and says that I have read the foregoing Verified Collective and Class Action Complaint and know its content and that to the best of my knowledge, information and belief, the factual allegations are true and accurate.

Signed by:

_____
Raheem Muhammad
CBE1E68E7BA3476...

Raheem Muhammad

19